Daniel C. Girard (State Bar No. 114826)
Angelica M. Ornelas (State Bar No. 285929)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846
*dgirard@girardsharp.com*
*aornelas@girardsharp.com*

| | |
|---|---|
| Jonathan D. Selbin (State Bar No. 170222) | Daniel M. Hutchinson (State Bar No. 239458) |
| **LIEFF CABRASER HEIMANN & BERNSTEIN, LLP** | **LIEFF CABRASER HEIMANN & BERNSTEIN, LLP** |
| 250 Hudson Street, 8th Floor | 275 Battery Street, 29th Floor |
| New York, NY 10013 | San Francisco, CA 94111 |
| Telephone: (212) 355-9500 | Telephone: (415) 956-1000 |
| Facsimile: (212) 355-9592 | Facsimile: (415) 956-1008 |
| *jselbin@lchb.com* | *dhutchinson@lchb.com* |

*Interim Co-Lead Counsel*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| ALBERT PIETERSON, *on behalf of himself and all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK, N.A.,<br><br>Defendant. | Case No. 3:17-cv-02306-EDL<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR COORDINATION WITH OTHER ACTION OR PROCEEDING, AND MEMORANDUM OF LAW IN SUPPORT THEREOF**<br><br>**ORAL ARGUMENT REQUESTED** |
| JOHN HASTINGS, *on behalf of himself and all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK, N.A.,<br><br>Defendant. | Case No. 3:17-cv-03633-EDL<br><br>Date:  February 19, 2019<br>Time: 9:00 a.m.<br>Place: Courtroom E, 15th Floor<br>Judge: Hon. Elizabeth D. Laporte |

**TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION ................................................................................................iv

    MEMORANDUM OF LAW ................................................................................................1

    I.    INTRODUCTION ...............................................................................................1

    II.    STATEMENT OF THE ISSUES TO BE DECIDED........................................2

    III.    FACTS .................................................................................................................2

    IV.    ARGUMENT ......................................................................................................7

        A.    Competing Class Actions Should be Coordinated....................................7

        B.    The Requested Relief Is Consistent with Rule 23(g)................................9

        C.    Wells Fargo's Arguments Do Not Counsel Against Coordination.......10

    V.    CONCLUSION..................................................................................................12

# TABLE OF AUTHORITIES

**Cases**

*Allen v. Bedolla*
   787 F.3d 1218 (9th Cir. 2015) ............................................................................................... 9

*Blair v. Equifax Check Servs., Inc.*
   181 F.3d 832 (7th Cir. 1999) ................................................................................................ 12

*Cobarruviaz v. Maplebear, Inc*
   2016 WL 5725076 (N.D. Cal. Sept. 30, 2016) ............................................................... 8, 9, 12

*Cullan & Cullan LLC v. M-Qube, Inc.*
   2014 WL 347034 (D. Neb. Jan. 30, 2014) .............................................................................. 9

*Figueroa v. Sharper Image Corp.*
   517 F. Supp. 2d 1292 (S.D. Fla. 2007) ................................................................................ 2, 9

*In re Checking Account Overdraft Litig.*
   859 F. Supp. 2d 1313 (S.D. Fla. 2012) ................................................................................... 9

*In re Jamster Mktg. Litig.*
   2008 WL 4482307 (S.D. Cal. Sept. 29, 2008) ....................................................................... 9

*In re Lawnmower Engine Horsepower Mktg. & Sales Practices Litig.*
   733 F. Supp. 2d 997 (E.D. Wis. 2010) ................................................................................. 10

*In re Trans Union LLC Fair Credit Reporting Act (FCRA) Litig.*
   923 F. Supp. 2d 1374 (J.P.M.L. 2013) ................................................................................... 7

*Martin v. Cargill, Inc.*
   295 F.R.D. 380 (D. Minn. 2013) .......................................................................................... 12

*Nat'l Credit Union Admin. Bd. v. RBS Sec., Inc.*
   2014 WL 12597071 (C.D. Cal. June 10, 2014) ..................................................................... 7

*Negrete v. Allianz Life Ins. Co. of N. Am.*
   523 F.3d 1091 (9th Cir. 2008) ......................................................................................... 10, 11

*Reynolds v. Beneficial Nat. Bank*
   288 F.3d 277 (7th Cir. 2002) ......................................................................................... 2, 8, 11

*Salmonson v. Bed Bath & Beyond, Inc.*
   2012 WL 12919187 (C.D. Cal. Apr. 27, 2012) ................................................................... 10

**Rules**

Fed. R. Civ. P. 1 .................................................................................................................... 10

Fed. R. Civ. P. 23 ............................................................................................................ passim

**Statutes**

28 U.S.C. § 1407 ..................................................................................................................... 7

**Other Authorities**

4 William Rubenstein, Newberg on Class Actions § 13:57 (5th ed. 2014) ...................... 1, 8, 9

Federal Judicial Center, Manual for Complex Litigation § 20.14 (4th ed. 2004) ................ 7, 9

Samuel Issacharoff, *Governance and Legitimacy in the Law of Class Actions*
    1999 Sup. Ct. Rev. 337 .................................................................................................... 2

# NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that on February 19, 2019, or as soon thereafter as the matter may be heard by the Honorable Elizabeth D. Laporte in Courtroom E, 15th Floor of the above-entitled court located at 450 Golden Gate Avenue, San Francisco, California 94102, Plaintiffs Albert Pieterson and John Hastings will and hereby do move for an order providing for coordination of the *Pieterson* and *Prather* actions.

This Motion is based on this Notice of Motion and Motion, the incorporated Memorandum of Law, the Declaration of Daniel C. Girard ("Girard Decl."), all documents on file in the above-captioned actions, the arguments presented by counsel at any hearing on this motion, and any other matter the Court may wish to consider.

DATED: January 14, 2019                    Respectfully submitted,

**GIRARD SHARP LLP**

By: */s/ Daniel C. Girard*
Daniel C. Girard (State Bar No. 114826)
Angelica M. Ornelas (State Bar No. 285929)

Jonathan D. Selbin (State Bar No. 170222)
Daniel M. Hutchinson (State Bar No. 239458)
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**

*Interim Co-Lead Counsel*

# MEMORANDUM OF LAW

## I. INTRODUCTION

Wells Fargo ("Wells") has negotiated a settlement of the class claims asserted in this case in a less advanced case—*Prather v. Wells Fargo Bank, N.A.*, No. 17-cv-00481 (N.D. Ill.) (Shah, J.). Wells never identified the claims in *Prather* as overlapping with those asserted in this case. Following extensive discovery and expert work, this Court is set to hear Plaintiffs' motion for certification of a litigation class on February 5. Yet, Wells apparently intends to move for preliminary approval in *Prather* before this Court decides class certification. In response, Plaintiffs move for an order coordinating these proceedings with *Prather*. While the specifics of any coordination should be determined by this Court and the presiding judge in *Prather*, Plaintiffs suggest that the fairest and most logical approach is to sequence the proceedings so that this Court's decision on class certification precedes any decision on settlement approval in *Prather*.

Coordination is critical where, as here, class members risk prejudice from a defendant's selection of a less advanced case as a vehicle to settle their more threatening claims. *See* 4 William Rubenstein, Newberg on Class Actions § 13:57 (5th ed. 2014) (settlement of the "least well-developed case" is a red flag). This Court appointed counsel in *Pieterson* and *Hastings* (together, "*Pieterson*") more than a year ago to serve as Rule 23(g) interim class counsel, with exclusive authority to prepare the class certification motion, conduct discovery, and negotiate settlement for the proposed *Pieterson* class. *Pieterson* counsel have diligently advanced the proceedings to a ruling on class certification— by propounding and responding to discovery requests, taking and defending depositions, filing and responding to multiple discovery letter briefs, consulting with and retaining experts in support of class certification, reviewing thousands of pages of documents produced by Wells and its experts, and fully briefing the motion for class certification with supporting expert reports. By contrast, the docket in *Prather* shows that the only significant litigation activity occurred in June 2018, after the case had been pending for a year and a half, when the plaintiffs filed a motion to compel and Wells filed a motion to stay. Rather than risk an adverse ruling on class certification in this case, Wells ignored this

Court's order appointing interim class counsel and turned instead to unappointed counsel with weaker negotiating leverage to settle the claims at issue here.

After a failed mediation in *Pieterson* in September, and with the hearing on class certification a month away, Wells apparently reached a deal in *Prather* sometime on or before December 20 even though it had confirmed, as late as December 12, that it intended to proceed with a follow-up mediation in *Pieterson* long scheduled for January 8. Under these circumstances, courts and commentators agree that coordination balances the public interests in favor of settlement with the imperative of procedural fairness and this Court's duty to serve as a guardian of class interests. *Reynolds v. Beneficial Nat. Bank*, 288 F.3d 277, 283-84 (7th Cir. 2002) (fact that a related case was more procedurally advanced, "relative to the half-hearted efforts of the settlement class counsel," was cause for concern); *Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1321 (S.D. Fla. 2007) (defendant's selection of plaintiff's counsel with the "most precarious position" raised serious questions). Wells must also be denied the benefits of its attempted end-run on this Court's jurisdiction, as otherwise such tactics will become the norm. *See* Samuel Issacharoff, *Governance and Legitimacy in the Law of Class Actions*, 1999 Sup. Ct. Rev. 337, 388 (discussing risk of a "race to the bottom" if "a defendant may play the rival class counsel off against each other seeking to extract the broadest release at the lowest price").

For these reasons, Plaintiffs respectfully request that the Court coordinate these proceedings with the presiding judge in *Prather* in a manner that permits the fully-briefed class certification motion here to be heard and decided before consideration of the settlement in *Prather*.

## II.   STATEMENT OF THE ISSUES TO BE DECIDED

Whether the *Pieterson* and *Prather* actions should be coordinated and class certification in *Pieterson* adjudicated before the *Prather* Court considers any proposed settlement.

## III.   FACTS

Since even before the inception of this case, Wells' litigation position has been that it runs distinct business lines and that TCPA litigation against one business line is separate from TCPA litigation against another. In 2013, Wells Fargo successfully opposed a motion to relate cases in this

2

District, arguing that "Wells Fargo's involvement in each case" did not "render the parties 'substantially similar' as the two cases involve two different business lines of Wells Fargo that operate independently." *See* Wells Fargo's Opp'n to Mot. to Relate Cases, *Martin v. Wells Fargo Bank, N.A.*, N.D. Cal. No. 12-6030, Dkt. No. 77 (Dec. 17, 2013). And it insisted that this business line distinction be strictly observed in a series of TCPA settlements entered into in 2014 and 2015.[1] In 2017, Wells faced a new series of TCPA putative class actions targeting various lines of business. *Prather* was the first-filed, on January 20, 2017, in the Northern District of Illinois. Girard Decl., ¶ 3. *Prather* involves a different line of business than *Pieterson*—the proposed class consists of non-Wells customers who received *checking account*-related fraud alert texts and pre-recorded messages. *See Myesha Prather v. Wells Fargo Bank, N.A.*, No. 17-cv-00481 (N.D. Ill.). *Prather* is assigned to the Honorable Manish S. Shah. Girard Decl., ¶ 3. *Pieterson* was filed in this Court on April 25, 2017. *See Albert Pieterson v. Wells Fargo Bank, N.A.*, No. 17-cv-02306 (N.D. Cal.) ("*Pieterson*"); Girard Decl., ¶ 4. The class is defined to include non-Wells customers who received autodialed or prerecorded *credit-card* debt-collection calls. *Id.*[2] On June 24, 2017, *Hastings v. Wells Fargo Bank, N.A.*, No. 17-cv-03633 (N.D. Cal.) ("*Hastings*"), was filed on behalf of consumers who received auto-

---

[1] *See Prather v. Wells Fargo Bank, N.A.*, No. 15-04231 (N.D. Ga. Aug. 31, 2017) (student loans); *Cross v. Wells Fargo Bank, N.A.*, No. 15-1270 (N.D. Ga. Apr. 21, 2015) (deposit accounts); *Markos v. Wells Fargo Bank, N.A.*, No. 15-1156 (N.D. Ga. Apr. 14, 2015) (mortgage); *Luster v. Wells Fargo Dealer Servs.*, No. 15-1058 (N.D. Ga. Apr. 8, 2015) (auto loans); *Franklin v. Wells Fargo Bank N.A.*, No. 14-2349 (S.D. Cal. Oct. 3, 2014) (credit-card).

[2] *Bacon v. Wells Fargo Bank, N.A.*, No. 17-cv-01505 (N.D. Ga.) ("*Bacon*"), was filed April 27, 2017, in the Northern District of Georgia on behalf of consumers who received calls from Wells concerning student loans, auto loans, and checking and savings accounts. *See* Girard Decl., ¶ 5. *Bacon* was dismissed on October 22, 2018, following an adverse ruling on the plaintiffs' motion to compel production of Wells' call data and other records, including policies and procedures of various business lines. Girard Decl., ¶ 10; *Bacon* Dkt. No. 87. Wells successfully opposed that motion with the argument that "the scope of discovery must be bounded by plaintiff's allegations regarding the calls they received, and should not be expanded to include lines of business that had no interaction with the plaintiffs." Girard Decl., ¶ 10; *Bacon* Dkt. No. 62. The *Bacon* court accepted Wells' arguments and denied the plaintiffs' requests for documents concerning lines of business that were not at issue. Girard Decl., ¶ 10; *Bacon* Dkt. No. 84.

dialed collection calls from Wells, and was later amended to allege credit-card calls only. *See* Girard Decl., ¶ 6.

Wells resisted all efforts to organize these parallel, potentially overlapping cases. Over Wells' objection, this Court deemed *Pieterson* and *Hastings* related pursuant to Civil Local Rule 3-12.[3] *See* Girard Decl., ¶ 8; Dkt. Nos. 29, 31, 37. But Wells urged the Court to treat the cases as separate: "Wells Fargo has multiple lines of business, that offer various different products and services. These business lines each have their own policies and procedures for servicing individual products, including procedures for TCPA compliance." Girard Decl., ¶ 8; Dkt. No. 31 at 1. Wells argued that neither it nor the Court "should have to shoulder the burden of tracking and relating *disparate putative class actions* brought by different plaintiffs, particularly ones that, upon further investigation, may involve completely different product lines . . . ." Girard Decl., ¶ 8; Dkt. No. 31 at 1-2. Wells filed no response when Plaintiffs submitted a Notice of Pendency of Other Action under Local Rule 3-13 identifying two other TCPA actions, including *Bacon*.[4] Girard Decl., ¶ 7. When *Pieterson* counsel moved for appointment as interim class counsel, Wells opposed the motion, arguing that "[t]here is no need to appoint interim counsel in this case. *Perez*, *Bacon*, *Prather*, and a host of other actions that pre-date this one are not even pending in this court. Nor is there any current threat of conflict between either *Perez* or *Bacon*—or other pending actions—and this case." Girard Decl., ¶ 9; Dkt. No. 38 at 6 (emphasis added).

On September 26, 2017, this Court appointed interim counsel under Federal Rule of Civil Procedure 23(g)(3) "to act on behalf of the proposed class as alleged in this matter" until such time as

---

[3] "An action is related to another when: (1) The actions concern substantially the same parties, property, transaction or event; and (2) It appears likely that there will be an unduly burdensome duplication of labor and expense or conflicting results if the cases are conducted before different Judges." Civ. L.R. 3-12. The Court consolidated *Hastings* with *Pieterson* on November 8, 2017. Girard Decl., ¶ 8; Dkt. No. 65.

[4] The second TCPA class case Plaintiffs identified in their notice was *Perez v. Wells Fargo Bank, N.A.*, No. 3:17-cv-00424 (S.D. Cal.) ("*Perez*"). The court dismissed that case on August 9, 2017 after the parties resolved the named plaintiff's claims on an individual basis. *Perez* Dkt. Nos. 18, 19.

lead counsel is appointed. Girard Decl., ¶ 11; Dkt. No. 56 at 1. The Court's order charged interim counsel with "*sole authority* over all matters concerning the prosecution of this case . . . and the proposed class," including "*settlement negotiations* on behalf of Plaintiff and putative class members . . . ." Girard Decl., ¶ 11; Dkt. No. 56 at 1. At Wells' insistence the proposed order entered by the Court includes a generic statement that the order does not purport to enjoin Wells from prosecuting, defending, or resolving any overlapping cases. *See* Girard Decl., ¶ 12; Dkt. No. 56 at 1.

Following their appointment, Interim Class Counsel twice moved to compel Wells to produce call data showing the calls made to the members of the proposed class and separately moved to compel production of documents bearing on whether the TCPA violations alleged in this case were knowing or willful. Girard Decl., ¶ 13; Dkt. Nos. 92, 117, 118. Plaintiffs reviewed over 4,000 pages of documents Wells produced during fact discovery and engaged experts to review data and technical documents. Girard Decl., ¶ 13. Plaintiffs deposed three Wells corporate designees and an employee fact witness, and each Plaintiff was deposed before the mediation on September 13, 2018. *Id*. That mediation failed, but the parties agreed to resume negotiations after class certification was briefed. *Id.*, ¶¶ 14-15. The parties agreed to resume mediation on January 8. *Id.*, ¶ 15.

The parties proceeded with expert discovery and class certification briefing. They exchanged initial expert reports on October 15, 2018, with each side disclosing an autodialer expert and a data analysis expert. Girard Decl., ¶ 16. Plaintiffs reviewed nearly 10,000 pages of documents produced by Wells' experts and deposed them on November 9 and 12. *Id*. Plaintiffs also defended the depositions of their experts on November 2 and December 4 and prevailed on an initial attempt by Wells to obtain an order striking the report of Plaintiffs' data analysis expert. *Id.*; Dkt. Nos. 133, 148. Plaintiffs filed their motion for class certification on November 16. Girard Decl., ¶ 17; Dkt. No. 153. With its opposition to Plaintiffs' motion for class certification[5] due on December 17, Wells reaffirmed

---

[5] Plaintiffs' motion for class certification is now fully briefed and set for hearing on February 5. Dkt. Nos. 171, 186. Wells' *Daubert* motion relating to Plaintiffs' data analysis expert is set for hearing on the same day and will be fully briefed as of January 18. Dkt. No. 171

in writing, on December 6, and orally on December 12, that it intended to mediate *Pieterson*. Girard Decl., ¶ 19.

Rather than risk an adverse ruling on class certification in *Pieterson*, however, Wells secretly negotiated a settlement in the *Prather* case on or before December 20. *Id.*, ¶ 20. The docket in *Prather* shows that the only significant litigation activity occurred in June 2018, when the plaintiffs moved to compel and Wells moved to stay. *Id.*, ¶ 18 & Ex. A. The *Prather* plaintiffs' motion for class certification is not due until May 1, 2019. *Id.*

The *Prather* settlement purports to extinguish the class claims in *Pieterson*. *Id.*, ¶ 21. Wells first alluded to having settled the class claims in this case on December 20. *Id.*, ¶ 20. On December 27 Wells confirmed that the deal reached in *Prather* would, if approved, moot the class claims at issue here. *Id.*, ¶ 21. Interim Class Counsel asked Wells to share the terms of the *Prather* settlement. Wells refused. *Id.*, ¶ 22. At the January 7, 2019 case management conference, the Court encouraged Wells to share the information that will be publicly available, by Wells' estimate, in the next week or two. Dkt. 182, Hr'g Tr. at 11:10-18. Wells declined again and continues to do so. *Id.*, ¶ 22.

As it has since the inception of this case, Wells also continues to resist disclosing other potentially overlapping cases to this Court. Wells represented at the January 7 conference that since the filing of *Prather*, Wells has been sued for TCPA violations in eleven different class actions across the country. Girard Decl., ¶ 23; Hr'g Tr. at 6:1-2 ("There have been 11 different class actions in various courts around the country since *Prather* was filed."). Wells has not filed a Notice of Pendency of Other Action or Proceeding in accordance with Local Rule 3-13 as to any such proceeding. Girard Decl., ¶ 24 & Ex. B. It has also declined Plaintiffs' request that it identify the actions referenced at the hearing. *Id.*

And while Wells now takes the position that *Prather* and *Pieterson* are sufficiently related to allow a settlement in *Prather* to subsume and resolve the class claims in *Pieterson*, Wells continues to oppose efforts to coordinate these cases. At the January 7 hearing, Interim Class Counsel suggested that the Court consider contacting Judge Shah. Girard Decl., ¶ 25; Hr'g Tr. at 10:4-5. The Court asked counsel for Wells whether he had any objection to doing so, commenting that "it's not unusual

for judges who have cases that at least somebody's arguing have some overlap in different jurisdictions to talk to each other." Hr'g Tr. at 15:8-10. After a colloquy, the Court directed the parties to confer on this issue and report back. *See id.* at 17:10-11. After the hearing, the parties conferred on this issue. Wells' counsel told Interim Class Counsel that Wells was not "comfortable" agreeing to such a call. Girard Decl., ¶ 26 & Ex. C.

## IV.   ARGUMENT

### A.   Competing Class Actions Should be Coordinated

Coordination between judges supervising overlapping claims is the favored approach, and particularly necessary here given the respective procedural postures of *Pieterson* and *Prather*. Despite previous indications to the contrary (*see* Girard Decl., ¶¶ 8-9), Wells now claims that *Pieterson* is wholly subsumed by *Prather* such that a settlement in *Prather* will extinguish the claims of *Pieterson* class members. *Id.*, ¶ 21. The Manual for Complex Litigation strongly encourages coordination of such related cases: "Even when related cases pending in different districts cannot be transferred to a single district, judges can coordinate proceedings in their respective courts to avoid or minimize duplicative activity and conflicts." Federal Judicial Center, Manual for Complex Litigation § 20.14 (4th ed. 2004) ("*Manual 4th*"). The Manual notes that coordination can take many forms, including "telephone calls or other communication to minimize conflicts . . . ." *Id.* § 21.1. Courts thus frequently act to coordinate related cases. *See, e.g.*, *Nat'l Credit Union Admin. Bd. v. RBS Sec., Inc.*, No. CV 11-5887-GW(JEMX), 2014 WL 12597071, at *1 (C.D. Cal. June 10, 2014) (noting that four judges had "conferred regarding possible coordination . . . to avoid duplicative litigation and/or inconsistent pre-trial rulings" after the JPML denied a request to consolidate the actions).[6]

---

[6] Interim Class Counsel do not believe transfer under 28 U.S.C. Section 1407 is available under these facts. *See, e.g.*, *In re Trans Union LLC Fair Credit Reporting Act (FCRA) Litig.*, 923 F. Supp. 2d 1374, 1375 (J.P.M.L. 2013) (denying MDL petition where cases were pending in only two districts and stating that "informal cooperation among counsel and coordination among the involved courts are, in our judgment, preferable to formal centralization.").

Civil Local Rule 3-13 specifically contemplates coordination, requiring that whenever a party knows that an action filed in this district "involves all or a material part of the same subject matter and all or substantially all of the same parties as another action which is pending in any other federal or state court," the party must "promptly" notify the Court. Coordination here will ensure that the "important public policies that undergird Rule 3-13" are not defeated because Wells, in spite of its on-the-record position that the cases do not conflict as they concern different business lines, elected to settle these claims under the canopy of a significantly less advanced case. *Cobarruviaz v. Maplebear, Inc*, No. 15-cv-00697, 2016 WL 5725076, at *2 (N.D. Cal. Sept. 30, 2016) ("[C]oordination between overlapping class actions is important," and Rule 3-13 "facilitates coordination among courts where there is multiple parallel litigation"); Civ. L.R. 3-13(b)(3)(B) (the required notice must state "whether coordination might avoid conflicts, conserve resources and promote an efficient determination").

Wells glibly asserted in correspondence with Interim Class Counsel that it "disclosed" *Prather* and counsel did nothing to coordinate this action with *Prather*. Girard Decl., ¶ 24 & Ex. B. But *Prather* involves a different line of business than *Pieterson*, and Wells has consistently maintained that its different lines of business are entirely separate for TCPA purposes. Wells has reversed itself and abandoned that position, now arguing that its business lines can be treated as a single enterprise for settlement purposes.

As importantly, *Pieterson* counsel did their part to avoid a conflict between their case and *Prather*, by litigating *Pieterson* to a ruling on class certification well before a motion in *Prather* was due to be filed. Plaintiffs have advanced the litigation by propounding and responding to discovery requests, taking and defending depositions, filing and responding to multiple discovery letter briefs, consulting with and retaining experts in support of class certification, and filing a motion for class certification with supporting expert reports. Wells responded to the litigation pressure and risk of losing class certification by turning to plaintiffs' counsel in the less advanced *Prather* case, where class certification remained on the horizon. Wells should not be rewarded for seeking out counsel with a weaker negotiating position. *See* Newberg on Class Actions § 13:57 (settling the "least well-developed case" "raise[s] suspicions"); *Reynolds*, 288 F.3d at 283-84 ("suspicious circumstances" that

1  required heightened judicial scrutiny included a settlement that would release the claims in a parallel
2  case that was more advanced and potentially subjected the defendant to greater liability); *Figueroa*,
3  517 F. Supp. 2d at 1321-23; *In re Jamster Mktg. Litig.*, No. 05-CV-0819JM(CAB), 2008 WL 4482307,
4  at *2 (S.D. Cal. Sept. 29, 2008) (court declined to defer to a pending settlement in a parallel state court
5  action that had relatively "little activity" on its docket); *see also In re Checking Account Overdraft
6  Litig.*, 859 F. Supp. 2d 1313, 1321 (S.D. Fla. 2012) (that a class certification motion was "fully briefed
7  and awaiting decision" in the case before the court weighed against deferring to a parallel action
8  notwithstanding that the other court had granted preliminary approval of a proposed settlement).

9        Plaintiffs recognize that coordination rests within the sound discretion of this Court and the
10 presiding judge in *Prather*, and there are multiple approaches to coordination that would address
11 Plaintiffs' concerns with the direction these proceedings have taken.  Plaintiffs respectfully submit,
12 however, that the preferable solution is for this Court to decide class certification before the *Prather*
13 Court decides preliminary approval.  *See Cobarruviaz*, 2016 WL 5725076, at *2 (Judge Chen noted
14 that "[u]nilateral action by any judge to certify a class or assert nationwide jurisdiction can fatally
15 undermine future coordination efforts," and found coordination necessary in view of an imminent
16 settlement "which would directly impact this case"); *Cullan & Cullan LLC v. M-Qube, Inc.*, No.
17 8:13CV172, 2014 WL 347034, at *10 (D. Neb. Jan. 30, 2014) (denying preliminary approval where
18 the case proposed to be settled was less advanced than other cases).  Accordingly, Plaintiffs request
19 that the hearing on their class certification motion proceed as scheduled.

20      **B.**    **The Requested Relief Is Consistent with Rule 23(g).**

21       The text and policies of Rule 23 further support the requested coordination.  Rule 23(g) seeks
22 to protect the interests of the putative class prior to certification.  This Court appointed Interim Class
23 Counsel and has an independent duty to "ensure that the interests of these absent class members are
24 safeguarded."  Newberg on Class Actions § 13:40; *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir.
25 2015).  Interim counsel are charged with "responsibility for protecting the interests of the class during
26 precertification activities, such as making and responding to motions, conducting any necessary
27 discovery, moving for class certification, and negotiating settlement."  *Manual 4th* § 21.11; *accord*

Fed. R. Civ. P. 23(g) advisory committee's note to 2003 amendment (emphasizing that class counsel appointed under Rule 23(g) are responsible for deciding whether to settle the case: "[C]lass counsel must determine whether seeking the court's approval of a settlement would be in the best interests of the class as a whole," and interim counsel are likewise responsible for "act[ing] on behalf of the putative class before the certification decision is made.").

Here, coordination with Judge Shah will further the objectives of Rule 23(g) and prevent Wells from subverting them by settling a less advanced case where no interim class counsel has been appointed.  Wells' dealings with non-appointed counsel to negotiate a settlement of claims pending in this Court violated this Court's order.  Dkt. No. 56 at 1 ("Interim Co-Lead Counsel will have sole authority over all matters concerning the prosecution of this case . . . including . . . settlement"); *see also In re Lawnmower Engine Horsepower Mktg. & Sales Practices Litig.*, 733 F. Supp. 2d 997, 1006 (E.D. Wis. 2010) (holding that appointment of class counsel "gives him or her *exclusive* authority to negotiate a settlement") (emphasis added) (citation omitted); *Salmonson v. Bed Bath & Beyond, Inc.*, No. CV 11-2293 SVW (SSX), 2012 WL 12919187, at *5 (C.D. Cal. Apr. 27, 2012) (defendant "was compelled to negotiate" only with court-appointed interim class counsel).  Coordination and enforcement of the Rule 23(g) order also comports with the Rule 1 mandate that the rules "be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.

Wells cannot now deny that *Pieterson* and *Prather* overlap.  Coordination late is preferable to coordination never.  The concerns of Interim Class Counsel will be addressed if this Court decides the class certification motion instead of permitting Wells to avoid a ruling by diverting the focus to the fairness of its *Prather* settlement.

C. **Wells Fargo's Arguments Do Not Counsel Against Coordination.**

At the hearing, Wells argued that the Ninth Circuit has indicated that the existence of an overlapping class action in another jurisdiction "doesn't have an effect, one court to the other." Dkt. 182, Hr'g Tr. at 6:6-22 (citing *Negrete v. Allianz Life Ins. Co. of N. Am.*, 523 F.3d 1091 (9th Cir. 2008)). In *Negrete*, the Ninth Circuit held that the district court improperly enjoined the progress of a

parallel federal action in a vacuum—i.e., absent any pending proposed settlement or "evidence of underhanded activity . . . ." 523 F.3d at 1099. The Ninth Circuit reasoned that the district court could not enlist the All Writs Act and the Anti-Injunction Act to limit proceedings in a coordinate court when no threat to its jurisdiction appeared. *Id*. at 1098-1103.  The court therefore vacated the district court's order, which stated that "[a]ny proposed settlement that resolves, in whole or in part, the claims brought in this action shall first be subject to review and approval by the Court in this litigation." *Id*. at 1095.

Plaintiffs in this case do not seek an injunction, and *Negrete* is distinguishable on other grounds as well.  First, an order appointing Rule 23(g) counsel was not at issue in that case. *Id*.  Second, the court found no evidence of bad conduct. *Id.* at 1099.  Here, Wells clearly sought to evade the pressure of an impending ruling on class certification in a hotly-litigated and more advanced case by settling with counsel in less-advanced case in which little of note has happened.  The facts here align with those in cases where courts have determined that a "reverse auction" may have occurred. *See Reynolds*, 288 F.3d at 282 (explaining that a "reverse auction" is "the practice whereby the defendant in a series of class actions picks the most ineffectual class lawyers to negotiate a settlement with in the hope that the district court will approve a weak settlement that will preclude other claims against the defendant").

True, the last paragraph of this Court's Order appointing interim counsel provides that "[n]othing in this Order enjoins, or purports to enjoin, the prosecution or resolution of any action or claims asserted by other plaintiffs or parties in any other case, including putative class claims that may overlap, in whole or in part, with the putative class claims here at issue." Dkt. No. 56, ¶ 9.  The Court's interim counsel order is consistent with *Negrete*, and did not restrict Wells' defense of the other TCPA actions it faces.  The paragraph in question, does not, however, mean that the Court's interim counsel order may be ignored and anything goes.  Wells reads too much into *Negrete* when it suggests that decision gives it unfettered ability to use a less-threatening parallel class action as a vehicle to settle a more advanced case.  To the contrary, *Negrete* recognized that it may be appropriate for a court to consider the circumstances of a settlement reached in a parallel class action. *See id.* at

1099-1100 (noting that a court may do so when there is "an odor of mendacity" but concluding there was no such evidence presented). Thus, nothing in *Negrete* suggests that coordinating with Judge Shah would be improper under these circumstances.

Nor is Wells in a position to discourage two federal judges from communicating about potentially related cases. At the January 7, 2019 hearing, Wells' counsel acknowledged that "[t]here have been 11 different class actions in various courts around the country since *Prather* was filed." Dkt. 182, Hrg. Tr., 6:1:2. Despite knowing of these cases, and the mandatory nature of Civil Local Rule 3-13, Wells never filed a Notice of Other Action or Proceeding. It also stated on the record that the cases were separate and distinct, and resisted the efforts of Plaintiffs' counsel to coordinate the related actions known to them. Wells' non-compliance threatens to give it "a potential benefit for itself at the expense of important public policies that undergird Rule 3-13." *Cobarruviaz*, 2016 WL 5725076, at *2.[7] Wells' lack of candor confirms the need for coordination with Judge Shah as it calls into question the circumstances under which Wells negotiated its *Prather* settlement. *See, e.g.*, *Blair v. Equifax Check Servs., Inc.*, 181 F.3d 832, 839 (7th Cir. 1999) (defendant occupied the best position to know the "relative sizes of, and relations among, the different class actions" and "could not plausibly explain" why it had not moved to transfer the related actions pending against it); *Martin v. Cargill, Inc.*, 295 F.R.D. 380, 387 (D. Minn. 2013) ("[T]he Court is troubled by the course of conduct in this case. In particular, defense counsel here . . . failed to timely inform . . . the Hawaii court that settlement discussions had reached fruition in Minnesota—a settlement that subsumed the Hawaii case.").

V.  **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court communicate with

---

[7] As Judge Chen recognized, Local Rule 3-13 serves to avoid conflicts between class actions—"the rule facilitates coordination among courts where there is multiple parallel litigation." *Cobarruviaz*, 2016 WL 5725076, at *2-3 ("Simply put, the important interests in coordinating overlapping litigation cannot be vindicated absent notice of the type required by Rule 3-13. Rule 3-13 should be broadly construed and any doubt resolved in favor of prompt and timely disclosure.").

Judge Shah to ensure proper sequencing between the now overlapping *Pieterson* and *Prather* proceedings so that this Court's decision on class certification will precede any decision on settlement approval in *Prather*.

DATED: January 14, 2019                     Respectfully submitted,

**GIRARD SHARP LLP**

By: */s/ Daniel C. Girard*
Daniel C. Girard (State Bar No. 114826)
Angelica M. Ornelas (State Bar No. 285929)

Jonathan D. Selbin (State Bar No. 170222)
Daniel M. Hutchinson (State Bar No. 239458)
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**

*Interim Co-Lead Counsel*